Dear Mr. Doyle and Mr. Foster:
This office is in receipt of your request for an opinion of the Attorney General in regard to the operation of the Lake Bruin Recreation and Water Conservation District. You ask the following:
 1. Is the District entitled to fines collected on Lake Bruin for violations of rules and regulations promulgated by the District that are not rules established by the state Wildlife and Fisheries?
 2. Is the District entitled under R.S. 38:3087.37(A) (9), 3087.43 and 3087.44 to collect a lease fee for a gas pipeline the District allows to cross Lake Bruin in March 1998 without a charge?
 3. How does the District enforce rules and regulations, including those of R.S. 38:3087.40 related to pollution of the lake without having the financial resources to hire a warden?
 4. What are the formal procedures for establishing into law any rule or regulation the District may adopt, what limitations are placed on the rule making power, and what are the guidelines for the amount of fees, building permits for piers and fines from violations of regulations?
 5. Under R.S. 38:3087.33(C) and 3087.37(A) (9) does the District have any authority to regulate or tax the portion of water going to the Town of St. Joseph that was not drawing water from Lake Bruin before Aug. 15, 1995, the date the District was established.
 6. How long must a person be off the Commission before he may be reappointed to another term inasmuch as the law provides "A commissioner may not serve more than two consecutive terms of any length"?
 7. Since there is nothing in the Act describing proxy vote, are such votes allowed on state commissioner or must commissioners be present at a meeting to cast a vote, and what constitutes a quorum of the seven member commission?
 8. How can we obtain a copy of Public Bid Law, R.S. 38:2181
et seq, since the district has not adopted any formal procedures for purchase, and what other information can you provide to us so we may better understand laws pertaining to activities of the commission?
 9. In response to the requirement that the District is to annually report expenses and income to the State, what items must be listed in this report and to what detail?
We first note that pursuant to the statutory revision authority of the Louisiana State Law Institute that Part XVII, Lake Bruin Recreation and Water Conservation District, containing R.S.38:3087.31 to 38:3087.47 was redesignated as Part XX, and renumbered as R.S. 38:3087.91 to 38:3087.107.
R.S. 38:3087.93, setting forth the purpose and powers of the District, designates the district as a "political subdivision of the state", and declares in Paragraph (B) that it shall constitute a body corporate in law with all powers, rights, privileges and immunities of a corporation, having the power to sue and be sued, to buy and sell, to levy taxes, to negotiate and execute contracts, to incur debts and issue negotiable bonds for payment thereof. It shall have authority to acquire every type of property, including servitudes and rights of use necessary to its purpose, and to lease, build, operate, and maintain any works or machinery designed to accomplish the purposes of the district.
In response to your first question, we find under R.S.38:3087.100 that the District would be entitled to fines collected for violations of rules and regulations promulgated by the District that are not those established by the state Wildlife and Fisheries. Therein it is provided that the Commission "may make and enforce such rules and regulations as it shall deem necessary and advisable" in order to accomplish the purposes of the district, which includes "to establish rules and regulations and cause them to be enforced with regard to activities engaged in upon Lake Bruin and Brushy Lake which are not regulated by the Louisiana Wildlife and Fisheries Commission."
We note that in Atty. Gen. Op. No. 89-304 this office concluded that the Department of Wildlife and Fisheries has exclusive control over hunting and fishing within the state which may be exercised in conjunction with local Districts, but the local Districts must receive the concurrence of the Department of Wildlife before they enact local regulations pertaining thereto.
Under the powers set forth in R.S. 38:3087.97 is the power to grant franchises for the purposes of laying gas utilities to supply gas within the district. Without knowing the arrangement under which a gas pipeline was allowed to be laid across Lake Bruin in March 1998 without a charge, we find that the District would be entitled to collect a lease fee for that gas pipeline unless they previously agreed there would never be a charge.
With regard to your question of how does the District enforce rules and regulations, including those related to pollution of the lake, "without having the financial resources to hire a warden", you indicate that the Tensas Parish Sheriff's Department and Louisiana Wildlife and Fisheries officers have been asked to enforce the District's boating regulations, and in March of 1997 pollution by an oil well resulted in a large clean up effort by the oil company after being reported to the Tensas Parish Sheriff and DEQ.
While you are given the authority to establish rules and regulations and to enforce the same, it would appear that other than seeking enforcement through these other agencies, the only recourse for the District would be to secure sufficient funds in order to enforce your own rules and regulations. The District is authorized to incur debt for any one or more of its lawful purposes, and to issue in its name negotiable bonds or certificates of indebtedness evidencing such debt, and to provide for the security and payment thereof as set forth in R.S. 33:3087.97(C). The District has additional authority to levy taxes for the purpose of improving, operating, and maintaining its facilities provided such tax is first approved at an election.
If these resources for funding cannot be obtained, it is obvious that enforcement will not be able to be accomplished by the District without assistance from other agencies.
In response to your inquiry as to the formal procedures for establishing into law any rule or regulation the District may adopt, we find that this office, Atty. Gen. Op. 91-74, and the jurisprudence, Scott v. Dept. Civil Service, 637 So.2d 1166
(La.App. 1994), Calcasieu Parish Police Jury v. Boullion,432 So.2d 1181 (La.App. 1983), has held that rules of a District, Board or Commission enacted pursuant to power bestowed upon them by the Legislature has the force of law. Herein the rules and regulations are enacted pursuant to its delegated authority from the Legislature under R.S. 38:3087.99 which gives the District the power to adopt "such rules and regulations as it shall deem necessary and advisable" to fulfill its duties as set forth therein. As a political subdivision of the state the District is not subject to the Administrative Procedures Act, and, the only limitation we find on the rule making power is that the rule be deemed necessary and advisable in connection with the duties, authority and power of the District which is a factual determination that would have to be judged on a rule by rule basis.
Insofar as the question of what are the guidelines for the amount of fees, building permits for piers, and fines from violations of regulations, we find no statutory guideline except the delineation of the fines set forth in R.S. 38:3087.100. However, we do note that the Board is authorized to employ such personnel, including professionals, as may be necessary in the operation of the business of the district, and cooperate with and seek advice and assistance from the state Department of Transportation and Development, and significantly, "do and perform any and all things necessary or incidental to the fulfillment of the purposes for which the district is created", R.S. 38:3087.97. Accordingly, it would appear the broad powers can be utilized to obtain advice in order to establish guidelines to be followed, or legislative guideline can be sought.
We find in accordance with R.S. 38:3087.93 that the District shall have complete control over the supply of fresh water of Lake Bruin, and authority to sell such water for municipal uses, except to any municipality for which use was being made by such municipality on August 15, 1995. It would appear under this provision the District may regulate or tax the portion of water going to the Town of St. Joseph if, as you indicate, the Town was not drawing water from Lake Bruin before August 15, 1995.
R.S. 38:3087.94 sets forth the initial terms of the commissioners as staggered terms with the directive that thereafter all commissioners shall serve five-year terms. It further provides no commissioner may serve more than two consecutive terms, even if one term is less than five years. Consequently, after the completion of the second term someone else would have to be appointed for a five year term. However, we find nothing that would prohibit that person from ever being reappointed at some later time such as at the expiration of someone else's term as long as some time has elapsed since the termination of the former commissioner's second term. We take the prohibition of the statute to mean there cannot be more than "two consecutive terms" but would not prohibit ever having another later term such as to fill another one of the staggered positions vacated at a later time.
This office has recognized the general prohibition of proxy votes by public bodies under R.S. 42:5(B) which provides as follows:
 Each public body shall be prohibited from utilizing any manner of proxy voting procedure, secret balloting, or any other means to circumvent the intent of R.S. 42:4.1 through 42:8.
It was stated in Atty. Gen. Op. No. 92-352 that the general prohibition found in R.S. 42:5(B) applies to all public officials "unless there is a statutory exception which specifically authorizes representation." Moreover, in Atty. Gen. Op. No. 77-1451 it was concluded the grant of rule making authority does not include the authorization for the use of proxies. Thus, it was held in Atty. Gen. Op. 93-708 since the provisions governing the commission do not include authorization for members to be represented by designees, then the general prohibition of R.S.42:5(B) is applicable, and only members of the commission have the power to vote and to be counted for a quorum.
In further response on this matter you ask what would constitute a quorum of the seven member commission. In accordance with the explanation by this office in Atty. Gen. Op. No. 93-466 it would be four members inasmuch as a quorum requires a majority of the entire membership of the commission. Moreover, in Atty. Gen. Op. No. 92-51 it was recognized removal of a member does not reduce the size of the board, and the number of members necessary for a quorum would also not be reduced, and would remain a majority of the board. Therein it was observed a board of eight members requires five for a quorum.
Enclosed is a copy of the Public Bid Law that you indicate you need, a pamphlet from the Legislative Auditor's Office and Louisiana Certified Public Accountants, in response to your request for other information to enable you to better understand laws pertaining to the commission. Although we will respond to opinion requests, it appears clear from your questions that you need some hands on assistance. We would suggest you seek to obtain help from counsel for the Parish Police Jury, Wild-life and Fisheries, the District Attorney or some other local counsel. While the legislature has designated this office as counsel for certain Watershed Districts, such is not the case with your District.
Additionally, in connection with your final question as to items that must be listed in the annual report for the expenses and income and in what detail, the Legislative Auditor's office has indicated they will have someone contact you to give you some information that may be of assistance for the report.
We hope the information we have been able to give you, and the assistance from others that we have suggested or sought on your behalf will be sufficient.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 By: _____________________________ BARBARA B. RUTLEDGE Assistant Attorney General
BBR